# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 12-cv-1629 (JFB)(WDW)

———————————

## JONEL BARBU,

Plaintiff,

VERSUS

## LIFE INSURANCE COMPANY OF NORTH AMERICA, DBA CIGNA,

Defendant.

———————————

**MEMORANDUM AND ORDER**
December 19, 2013

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Jonel Barbu ("plaintiff") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), challenging the denial of his claim for long-term disability benefits. Plaintiff's claim was denied by defendant Life Insurance Company of North America ("defendant" or "LINA"). Plaintiff brings the present motion, pursuant to Rule 57 of the Federal Rules of Civil Procedure, and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking an order declaring that a *de novo* standard of review applies to this action. For the reasons set forth below, plaintiff's motion is granted.

It is well settled that the standard of review is *de novo*, unless the disability plan grants greater discretion to the insurer. In the present motion, plaintiff argues that LINA did not receive such discretion in the insurance policy governing the disability plan, and that *de novo* review is, therefore,

required. Defendant does not dispute that the insurance policy itself grants no discretion, but identifies discretionary language in a separate document—namely, the "Employee Welfare Benefit Plan Appointment of Claim Fiduciary" (the "ACF")—and contends that this document triggers the application of arbitrary and capricious review. In a recent decision, *CIGNA Corp. v. Amara*, the Supreme Court made clear that a summary document about a plan—in that case, a Summary Plan Description or "SPD"—does not, simply by its existence and reference to the policy and plan, constitute the terms of the plan itself. 131 S. Ct. 1866 (2011). As other courts (such as the Tenth Circuit) have made clear since *Amara*, an insurer can still make a summary document part of the plan by, for example, explicitly doing so in the policy or on the face of the summary document itself. This Court concludes that the *Amara* holding applies with equal force to the ACF and, thus, defendant has the burden of demonstrating that the policy itself or

another document (such as the ACF itself) made clear that the language of the ACF was integrated into the plan and contained *terms* of the plan. Ultimately, in this particular case, defendant fails to meet that burden because it has not shown clear language that any document besides the insurance policy contains enforceable plan terms.   On the contrary, the insurance policy contains an integration clause defining the "entire contract," which does not include the ACF.  Moreover, neither the ACF itself, nor any other document, identifies the ACF as part of the plan.   At the very least, the conflict among the documents in this case creates an ambiguity to be construed in plaintiff's favor.  Thus, it is clear that the *de novo* standard of review must be applied.

I.   BACKGROUND

A.  Factual History

The following facts are not disputed by the parties.  Plaintiff was an employee of Underwriter Laboratories and was covered by its Long Term Disability Plan ("the Plan"), which is a benefit plan under ERISA. (Def. Br. at 1.)    Defendant determined eligibility for Plan benefits in its capacity as Claim Administrator. (*Id.*)

Plaintiff's recent medical history includes back and neck problems, carpal tunnel syndrome, ulcerative colitis and inflammatory bowel disease, among other ailments. (Ans. ¶¶ 35, 55.)    In 2010, defendant approved several of plaintiff's claims for disability benefits. (*Id.* ¶¶ 29, 34, 40.)  In 2011, defendant adjusted plaintiff's benefits because plaintiff also began receiving Social Security Disability benefits. (*Id.* ¶ 67.)    In June 2011, defendant determined that plaintiff was no longer entitled to disability benefits under the Plan. (Def. Br. at 1.)

B.  The Policy and Plan

As noted, there is no dispute that the Plan falls under ERISA, but the question of what constitutes the Plan is at the center of this motion.  Defendant contends that the Plan is comprised of multiple "plan documents," just one of which is the group policy it issued to Underwriter Laboratories ("the Policy").  In defendant's view, other "plan documents" also contain enforceable Plan terms.  Plaintiff, in contrast, argues that the Policy alone sets forth the terms and conditions of the Plan.  The Policy contains language—requiring a claimant to submit "satisfactory proof"[1]—that courts have relied on in applying a *de novo* standard of review.  *See, e.g.*, *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir. 1999).  Thus, plaintiff contends that the *de novo* standard must apply because the Policy is the only enforceable "plan document" in this case.

There is no document before the Court that, on its face, defines the term "plan documents."    The Policy does state, however, that it "describes the terms and conditions of coverage."  (Ex. A to Delott Aff. at LINA 1222.) It also contains the following integration clause, under the heading "Entire Contract":

> The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

(*Id.* at LINA 1242.)  Plaintiff argues that these two provisions provide a textual basis for the conclusion that documents besides the Policy and the applications are extrinsic, and do not contain enforceable Plan terms.

---

[1] Ex. A to Delott Aff. at LINA 1233.

2

Defendant's argument rests on a document not named in the Policy's integration clause. That document is called the "Employee Welfare Benefit Plan Appointment of Claim Fiduciary" (hereinafter "ACF"), and it was executed the same day as the Policy, on January 1, 2004. In short, the ACF appears to contain a grant of discretion from the Plan administrator (the Compensation Committee of Underwriter Laboratories) to defendant as "Claim Fiduciary," enabling defendant to make final benefit eligibility determinations under the Plan. Courts interpreting similar documents have considered this language sufficient to trigger arbitrary and capricious review. *See, e.g.*, *Raybourne v. CIGNA Life Ins. Co. of N.Y.*, 576 F.3d 444, 448-49 (7th Cir. 2009).

The ACF does not state that it is part of the Plan—in fact, it refers to "the Plan" as if it is something separate—but the ACF does require that its terms be made known to Plan participants through the Plan's summary descriptions. Summary plan descriptions (SPDs) are ERISA-required documents meant to convey the contents of the Plan "in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). Whether SPDs are themselves legally enforceable plan documents has been the subject of some debate, with the Supreme Court recently holding that they generally are not, *see CIGNA Corp. v. Amara*, -- U.S. --, 131 S.Ct. 1866, 1877-78 (2011), although SPDs may still be incorporated into a plan explicitly. *See, e.g.*, *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[A]n insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan.

Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan.").

Here, a "Group Insurance Certificate" ("Certificate") served as the SPD. The Certificate is a document delivered to individual employees, like plaintiff, listing the "benefits, conditions, and limits of the Policy." (Ex. A to Delott Aff. at LINA 1242.) It also summarizes the grant of discretion in the ACF, but states nothing about whether the ACF was an enforceable Plan document. (*Id.* at LINA 1252.) Concerning its own status, the Certificate states "[t]his is not the insurance contract" and that it "does not waive or alter any of the terms of the Policy." (*Id.*)

In sum, there are three documents relevant to the present motion: the Policy, the ACF, and to a lesser extent, the Certificate, which echoes the ACF and serves as the SPD. The question is which of these three documents states enforceable Plan terms.

C. Procedural History

After exhausting administrative remedies, plaintiff initiated this suit under Section 502(a) of ERISA "to recover benefits due him under the terms of his plan [and] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff filed his complaint on April 3, 2012, and defendant answered on May 21, 2012. The parties proceeded to engage in discovery, and in October 2012, plaintiff received the ACF from defendant for the first time. Previously, plaintiff made multiple requests for his entire claim file, but he had not received the ACF before.

On May 30, 2013, plaintiff filed the present motion for a declaratory judgment. In particular, plaintiff seeks an order declaring that a *de novo* standard of review applies based on the language in the Policy. On June 14, 2013, defendant responded in opposition to the motion. Defendant does not oppose the consideration of this motion, but argues that the ACF is sufficient to trigger arbitrary and capricious review. Plaintiff replied on June 23, 2013, and oral argument was held on December 17, 2013.

## II. DISCUSSION

Because plaintiff seeks a declaratory judgment, the discussion turns first to the standard for considering a declaratory judgment action, and second to the standard for reviewing the denial of plaintiff's benefits.

### A. Declaratory Judgment

Jurisdiction to consider a declaratory judgment action exists only if there is an "actual controversy," 28 U.S.C. § 2201(a), defined as one that is "real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (internal citation and quotation marks omitted).

There is nothing hypothetical about the facts underlying this motion: plaintiff has been denied benefits and the resolution of his case likely depends on the standard of review applied. Accordingly, neither party contests this Court's entertainment of a declaratory judgment action. "The decision to grant declaratory relief rests in the sound discretion of the district court." *Lijoi v. Continental Cas. Co.*, 414 F. Supp. 2d 228, 247 (E.D.N.Y. 2006). That discretion is informed by two primary considerations: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether it would finalize the controversy and offer relief from uncertainty. *See Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). The lack of any dispute about these factors indicates that the present motion is useful and will offer relief to the parties.

District courts may also consider: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). Neither of the first two concerns are present, and there does not appear to a better or more effective remedy. The alternative would be to decide the standard of review as part of summary judgment, which would invite additional litigation and preclude the parties from reconsidering settlement once this threshold question is answered. Therefore, a declaratory judgment is appropriate in this case.

### B. Standard of Review

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.

1996). In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that the standard of review is *de novo* until it is shown that the benefit plan grants broader discretion to an administrator or fiduciary. 489 U.S. 101, 115 (1989). If the plan does grant discretion, an arbitrary and capricious standard of review applies. *Zuckerbrod*, 78 F.3d at 49. Defendant carries the burden of proving that the arbitrary and capricious standard of review applies, and any ambiguities are resolved in plaintiff's favor. *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008); *see also Kinstler*, 181 F.3d at 249.

Here, it is undisputed that the language of the Policy itself does not trigger arbitrary and capricious review. The Policy requires a beneficiary to submit "satisfactory proof" of disability (Ex. A to Delott Aff. at LINA 1233), which is the same language that the Second Circuit has held requires *de novo* review. *Kinstler*, 181 F.3d at 251.

With no support in the text of the Policy, defendant turns to the ACF. It contains a grant of some form of discretion,[2] which is significant only if the ACF is an enforceable "plan document." The argument that the ACF is a "plan document" capable of triggering arbitrary and capricious review derives largely from the Seventh Circuit's decision in *Raybourne v. CIGNA Life Ins. Co. of N.Y.*, which reached that result when it considered what appears to have been an identical form.[3] 576 F.3d at 448-49. *Raybourne* rejected the plaintiff's theory that the ACF was extrinsic to the plan, since the plan's SPD explained the ACF and, crucially for the purposes of this case, stated that both the insurance policy and the ACF set forth the provisions of the plan. *Id.*

The present case is distinguishable from *Raybourne* for several reasons. As a threshold matter, since *Raybourne* was decided, the Supreme Court has provided additional guidance with respect to this issue. In particular, nearly two years after *Raybourne*, the Supreme Court's decision in *Amara* sharpened the focus on which documents are explicitly incorporated into an ERISA plan. Rejecting the Government's argument that SPDs may be enforced as the terms of the plan itself, the Court noted that the text of ERISA defines SPDs as "communication[s] with beneficiaries about the plan, … [which] do not themselves constitute the terms of the plan." 131 S. Ct. at 1878. In short, after *Amara*, it is clear that SPDs are not part of the terms of the plan unless that is conveyed

---

[2] Because defendant has not met its burden to show that the ACF is part of the Plan, the Court need not decide whether the language in the ACF is sufficient to trigger arbitrary and capricious review.

[3] Defendant also appears to rely on *Siegel v. Conn. Gen. Life Ins. Co.*, a case about whether an ACF could be considered a proper plan amendment. 702 F.3d 1044 (8th Cir. 2013). Plaintiff's motion anticipated that defendant would make a similar argument, but defendant explicitly chose not to, instead characterizing the ACF as a "stand-alone plan document." (Defs. Br. at 5.) At oral argument, defendant again declined to argue an amendment theory, *see infra* note 4. That concession is not surprising given that it is uncontroverted here that the requirements of an amendment of the plan were not satisfied. Therefore, *Siegel* does not offer support to defendant's position in this case.

5

in a clear and unambiguous manner, which the Tenth Circuit has suggested could be done with explicit language of the SPD itself. *See Eugene S.*, 663 F.3d at 1131. This Court concludes that the guidance of the Supreme Court in *Amara* on SPDs applies with equal force to ACFs. Thus, any attempt by defendant to have this Court simply infer that the ACF is part of the Plan, even if there is no textual support for that inference in the Policy or the ACF itself, is contrary to *Amara*.

That point brings the Court to the critical factual distinction between this case and *Raybourne*. There, the defendant could at least point to a clause in the SPD stating that the ACF contained plan terms. Here, the SPD (which is the Certificate) does not contain a similar provision, and defendant has relied on its text only to argue that it provided notice of the ACF's terms, not to argue that it supports the ACF's incorporation into the Plan. In short, defendant has identified no text in any document that incorporates the ACF into the Plan to any extent. Moreover, not only does this case lack equivalent text noting the incorporation of the ACF into the Plan, it is distinguished from *Raybourne* in another material way: there is actually text to support the opposite conclusion. Here, the integration clause does not include the ACF among the three items ("the Policy, the application of the Employer…and the applications… of the Insureds,") making up the "entire contract." (Ex. A. to Delott Aff. at LINA 1242.) There was no integration clause discussed in *Raybourne*.

It is worth noting that the integration clause refers to the Policy, not to the Plan, and on its face it defines the "entire

contract," not the "entire set of plan documents." Courts in this and other circuits, however, have relied on very similar integration clauses when declining to enforce documents extrinsic to the insurance policy. *See Hammill v. Prudential Ins. Co. of Am.*, No. 11-CV-1464, 2013 WL 27548, at *2 (E.D.N.Y. Jan. 2, 2013) (noting importance of SPD's omission from policy's integration clause referring to "[t]he entire Group Contract"); *Francis v. Anacomp, Inc. Accidental Death & Dismemberment Plan*, No. 10-CV-467, 2011 WL 4102143, at *4-5 (S.D. Cal. Sept. 14, 2011) (rejecting argument that ACF was an enforceable plan document where policy purported to be fully integrated); *Jobe v. Med. Life. Ins. Co.*, 598 F.3d 478, 486 (8th Cir. 2010) (reviewing multiple "plan documents" and concluding that fully-integrated policy "controls over the inconsistent grant of discretion to the administrator in the summary plan description"); *Grosz-Salomon v. Paul Revere Life Ins. Co*, 237 F.3d 1154, 1161 (9th Cir. 2001) (holding SPD unenforceable where policy's integration clause limited entire contract to policy and applications).

This Court likewise concludes that the ACF's grant of discretion is unenforceable because it is not part of the "entire contract" described in the Policy. To the extent that defendant urges a distinction between the "Policy" and the "Plan" which would leave room for the enforcement of other "plan documents" besides the Policy, there is simply no textual basis for that distinction among the documents in this case. At oral argument, the Court asked defendant's counsel directly what made the ACF part of the broader Plan. Counsel responded that the ACF was signed by LINA and a representative of the employer,

Underwriter Laboratories.  He was unable to cite any case or other legal support for the proposition that two signatures alone can incorporate a document into an ERISA plan, and the Court is not aware of any authority to that effect.[4]  In sum, given the integration clause in the Policy and the fact that neither the ACF nor any other document makes the ACF part of the Plan, the Court concludes that the ACF's discretionary language is not an enforceable Plan term.

To be clear, the Court certainly does not disagree with defendant that there may be multiple enforceable plan documents. That general point has long been recognized. *See*, *e.g.*, *Myron v. Trust Co. Bank Long Term Disability Benefit Plan*, 522 F. Supp. 511, 519 (N.D. Ga. 1981) ("[T]he Court has found no authority that states this written instrument must be one all-inclusive document. Indeed the legislative history indicates that Congress contemplated the

---

[4] Defendant explicitly declined to argue, both in its brief and at oral argument, that the ACF amended the Policy.  In other cases, defendants have argued that non-policy documents were enforceable as amendments, *see, e.g.*, *Siegel*, 702 F.3d at 1048-49, but in this case, the amendment provision requires any amendment to be "endorsed on, or attached to, the Policy." (Ex. A to Horbatiuk Aff. at LINA 1242.) Plaintiff did not receive the ACF until discovery, despite earlier requests for his entire claim file, and defendant has not attempted to show that the ACF complied with the amendment rule. *See Francis*, 2011 WL 4102143, at *4 (holding in the alternative that the ACF was unenforceable because it was "neither attached to nor endorsed on the policy"); *see also Heim v. Life Ins. Co. of N. Am.*, No Civ.A. 10-1567, 2010 WL 5300537, at *2 (E.D. Pa. Dec. 22, 2010)(finding ACF not a plan document where it was not attached to the policy or part of the claim file plaintiff was provided).

possibility of more than one writing constituting an ERISA plan.").

Of the many documents available in an ERISA case, however, it is not always obvious which ones contain plan terms.  As part of its burden to justify more deferential review, the insurer must show that the document containing a grant of discretion is incorporated into the broader plan.  *See Wenger v. Prudential Ins. Co. of Am.*, No. 12-CV-1896, 2013 WL 5441760, at *6 (S.D.N.Y. Sept. 26, 2013) ("Like the courts in *Durham, Hamill,* and *Sullivan* … this Court finds that Defendant has failed to meet its burden of showing that the [SPD] was incorporated into the LTD Plan." (citing *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 395 (S.D.N.Y. 2012); *Hammill*, 2013 WL 27548, at *6; *Sullivan v. Prudential Ins. Co. of Am.*, No. 12-CV-1173, 2013 WL 1281861, at *1 (E.D. Cal. Mar. 25, 2013))).

The burden to *show* incorporation of a particular document flows naturally from *Amara*'s focus on which documents actually contain plan terms.  *Wenger* and the cases it cites are all post-*Amara* cases.  Although each of them dealt with SPDs, the same logic applies to an ACF, particularly when the policy contains an integration clause.  A policy's integration clause could distinguish which of multiple "plan documents" contained enforceable plan terms even before *Amara*.  *See*, *e.g.*, *Palmiotti v. Metro. Life Ins. Co.*, 423 F. Supp. 2d 288, 298-99 (S.D.N.Y. 2006).

In essence, the question presented here is decided by the defendant's burden to show that the Plan grants it broader discretion than *de novo* review affords.

Language triggering more discretionary review is easy to draft, and where the insurer failed to do so, this Court will "decline to search in semantic swamps for arguable grants of discretion." *Kinstler*, 181 F.3d at 251. *Kinstler* and most subsequent cases tend to focus on the language of the grant of discretion, but clear language must first define which documents contain enforceable plan terms. Such language is as easy to draft as a grant of discretion, and likely deserving of even greater scrutiny after *Amara*.

Defendant has thus failed to meet its burden to prove that arbitrary and capricious review applies because it has not shown that clear language incorporates the ACF into the Plan. On the contrary, the Policy's integration clause defines the "entire contract," which does not include the ACF. In any event, at the very least, the conflict between the Policy and the ACF creates an ambiguity to be construed in plaintiff's favor, and mandates application of the *de novo* standard of review.

## III. CONCLUSION

For the reasons set forth above, plaintiff's Rule 57 motion is granted, and the Court will apply the *de novo* standard of review to the denial of plaintiff's claim for long-term disability benefits.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 19, 2013
Central Islip, NY

* * *

Plaintiff is represented by Jeffrey D. Delott, 366 North Broadway, Suite 410k-3, Jericho, NY 11753. Defendant is represented by Kevin G. Horbatiuk and Marcin J. Kurzatkowski, Russo, Keane & Toner, LLP, 33 Whitehall Street, 16th Floor, New York, NY 10004.